EVANS–HAILEY COMPANY, Inc.

v.

CRANE COMPANY.

Mrs. Herman MERRITT

v.

John H. WOODY et al.

Herman MERRITT

v.

John H. WOODY et al.

Steven Eugene MERRITT

v.

John H. WOODY et al.

John L. MANNING

v.

LION OIL, INC.

Lucy MANNING

v.

LION OIL, INC.

Fred D. SULLIVAN

v.

LOUISVILLE & NASHVILLE RAIL-ROAD CO.

Mrs. Mary Bell REHORN

v.

TERMINAL TRANSPORT CO., Inc.

Samuel Ralph REHORN

v.

TERMINAL TRANSPORT COMPANY, Inc.

Edward Earl REHORN

v.

TERMINAL TRANSPORT COMPANY, Inc.

Reba FALSTER

v.

TRAVELERS INSURANCE CO.

Mrs. Josephine CHEEK

v.

CHESTERS, INC.

Robert MURDIC

v.

LOUISVILLE & NASHVILLE RAIL-ROAD CO.

George B. FLIPPEN et ux.

v.

TEXAS EASTERN TRANSMISSION CORP. et al.

Mrs. Robert M. STRUBE, Sr.

v.

LOUISVILLE & NASHVILLE RAIL-ROAD CO. et al.

Elroy ROWLETT, b/n/f

v.

Oscar J. KILBURN et al.

Mary Ruth BURGESS, Administratrix

v.

LOUISVILLE & NASHVILLE RAIL-ROAD CO.

Mrs. D. L. WARREN, Sr., et al.

v.

UNITED STATES FIDELITY & GUAR-ANTY CO.

Mrs. Muriel M. SEYFERT, Executrix

v.

NEWARK INSURANCE CO.

T. W. TAYLOR

v.

GREAT AMERICAN INSURANCE CO.

T. W. TAYLOR

v.

STATE FARM FIRE & CASUALTY CO.

John L. JENNINGS, Administrator

v.

LOUISVILLE & NASHVILLE RAIL-ROAD CO. (three cases).

John Henry BUCHANAN, Jr.

v.

CONTINENTAL SOUTHERN LINES, INC.

Edward MUNDY

v.

LOUISVILLE & NASHVILLE RAIL-ROAD CO.

Civ. Nos. 2730, 2759, 2760, 2761, 2781, 2782, 2828, 2835, 2836, 2837, 2847, 2874, 2886, 2901, 2906, 2909, 2978, 2985, 3032, 3050, 3052, 3058, 3059, 3060, 3156, 3167.

United States District Court
M. D. Tennessee,
Nashville Division.

June 28, 1962.

No. 2730:

Hofstetter & Hofstetter, Nashville, Tenn., for plaintiff.

Cecil Sims, Bass, Berry & Sims, Nashville, Tenn., for defendant, Crane Co.

Charles H. Warfield, Warfield & Entrekin, Nashville, Tenn., for third-party defendant, Modern Welding Co., Inc.

Nos. 2759–2761:

Jack Norman, Jr., Nashville, Tenn., for plaintiffs.

Watkins, McGugin & Stewart, Nashville, Tenn., for defendants.

Nos. 2781 and 2782:

Collier Goodlett, Sr., Goodlett & Goodlett, Clarksville, Tenn., and Williams, Howser & Thomas, and Z. T. Osborn, Jr., Nashville, Tenn., for plaintiffs.

Frank C. Gorrell, Bass, Berry & Sims, Nashville, Tenn., for defendant.

No. 2828:

Joseph L. Lackey and Karl Bishop, Nashville, Tenn., for plaintiff.

S. McP. Glasgow, Jr., Glasgow & Adams, and David M. Keeble, Nashville, Tenn., for defendant.

Nos. 2835–2837:

Jack Norman and Williams, Howser & Thomas, Nashville, Tenn., and McAllester & McAllester, Chattanooga, Tenn., for plaintiffs.

Glasgow & Adams, Nashville, Tenn., for defendant.

No. 2847:

Charles F. Galbreath and Joseph L. Lackey, Nashville, Tenn., for plaintiffs.

S. McP. Glasgow, Jr., Glasgow & Adams, Nashville, Tenn., for defendant.

No. 2874:

James B. Ross, Columbia, Tenn., for plaintiff.

H. Francis Stewart, Watkins, McGugin & Stewart, Nashville, Tenn., for defendant.

No. 2886:

Harris Gilbert, Barksdale & Hudgins, Nashville, Tenn., for plaintiff.

David M. Keeble, Nashville, Tenn., for defendant.

No. 2901:

Elmer Woolard, Lebanon, Tenn., and Solon Fitzpatrick, Carthage, Tenn., for plaintiffs.

Tom Stewart and George H. Armistead, Jr., Nashville, Tenn., for defendants.

No. 2906:

William S. Bruce, Jr., and J. C. Summers, Nashville, Tenn., for plaintiff.

David M. Keeble, Nashville, Tenn., for defendant.

No. 2909:

C. Allen High and Dan Garfinkle, Nashville, Tenn., for plaintiff.

J. Ross Cheshire, Jr., and T. T. McCarley, Nashville, Tenn., for defendants.

No. 2978:

Clement, Sanford & Fisher, Nashville, Tenn., for plaintiff.

David M. Keeble, Nashville, Tenn., for defendant.

No. 2985:

Frank L. Hollis, Peeler & Hollis, Camden, Tenn., for plaintiffs.

Wirt Courtney, Jr., Goodpasture, Carpenter, Woods & Courtney, Nashville, Tenn., for defendant.

No. 3032:

Goodpasture, Carpenter, Woods & Courtney, Nashville, Tenn., for plaintiff.

Charles L. Cornelius, Jr., Nashville, Tenn., for defendant.

Nos. 3050 and 3052:

James Cunningham, Jr., and Marks & Fleming, Clarksville, Tenn., for plaintiff.

Goodpasture, Carpenter, Woods & Courtney, Nashville, Tenn., and Malcolm Y. Marshall, Ogden, Brown, Robertson & Marshall, Louisville, Ky., for defendant, Great American Insurance Co.

Nos. 3058–3060:

John T. Conners, Jr., Davis, Boult, Hunt & Cummings, Nashville, Tenn., for defendant, State Farm Fire & Casualty Co.

Rupert W. Leslie, Waller, Davis & Lansden, Nashville, Tenn., for plaintiff.

David M. Keeble, Nashville, Tenn., for defendant.

No. 3156:

Karl L. Bishop, Nashville, Tenn., for plaintiff.

Phillips, Gullett & Steele, Nashville, Tenn., for defendant.

No. 3167:

Harsh, Kelly & Harsh, Gallatin, Tenn., for plaintiff.

Woodall Murrey, Gallatin, Tenn., and David M. Keeble, Nashville, Tenn., for defendant.

GRAY, District Judge.

All of these twenty-six cases have been brought here from various state courts by petitions for removal in which defendants sought to invoke this court's diversity jurisdiction under 28 U.S.C. §§ 1332, 1441 and 1446.

On its own motion June 1, 1962, the court ordered all of the defendants to appear June 15, 1962, to show why the cases should not be remanded because of failure of the allegations of the citizenship of corporate parties to meet the requirements of 28 U.S.C. § 1332 as amended by Public Law 85–554, 72 Stat. 415, effective July 25, 1958.

The order called the attention of counsel to F. & L. Drug Corp. v. American Central Ins. Co., 200 F.Supp. 718 (D. Conn.1961), wherein the problem involved was discussed at length. In the covering letter to counsel, those removing defendants "desiring to file either motions to amend their petitions, with accompanying briefs, or briefs in support of the petitions as presented" were asked to do so by June 8, 1962. Plaintiffs were given until the hearing to file briefs as they might be advised. A few defendants submitted motions to amend, some of them accompanied by briefs as required by the standing rules of the court, and a few submitted briefs in support of unamended petitions within the time requested. At the hearing, others presented similar papers or asked leave to do so. A few plaintiffs responded with briefs, none with motions to remand.

To get the benefit of maximum assistance from counsel on the problem, the court allowed additional time to those requesting it for the filing of motions and briefs, and all of these have now been received and fully considered.

In four of the cases, the court has found it unnecessary to reach the issue that gave rise to the order of June 1, 1962, because further examination of the records discloses affirmatively that the court does not have jurisdiction. These will be disposed of first.

■■ In the companion cases Nos. 2759, 2760, and 2761, (Merritt v. Woody) the record discloses that the cases were removed before the declarations were filed in the state court. In Tennessee the time for removing a case begins to run from the filing of the declaration, not the summons. Munsey v. Testworth Laboratories, 227 F.2d 902 (6 Cir. 1956). These cases were therefore prematurely removed. Milton A. Jacobs, Inc. v. Manning Mfg. Corp., 171 F.Supp. 393 (D.C. 1959). Since this court has no jurisdiction in these cases, except the limited jurisdiction necessary to determine whether it has jurisdiction, Beleos v. Life & Casualty Ins. Co. of Tennessee, 161 F.Supp. 627, 628 (D.S.C.E.D.1956), they must be remanded to the state court.

■ In No. 2874 (Cheek v. Chesters, Inc.), the record affirmatively shows that the defendant is a Tennessee corporation.

As such, it is not entitled to remove a diversity case to this court. 28 U.S.C. § 1441(b). It must therefore be remanded.

The other twenty-two cases depend upon the effect to be given the 1958 amendment, Public Law 85–554, supra, of the diversity jurisdiction statute, 28 U.S.C. § 1332, in gauging the jurisdictional sufficiency of a removal petition. The particular provision involved is that added as § 1332(c):

"(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

All of the cases considering allegations under this paragraph seem to agree that this section must be given effect in the "short and plain statement of facts" required in complaints by Rule 8(a) (1), Federal Rules of Civil Procedure, 28 U.S.C., and in verified removal petitions by 28 U.S.C. § 1446(a). Minimum allegations are sought to be indicated by Form 2(a), Appendix of Forms, Federal Rules of Civil Procedure, as amended April 17, 1961, effective July 19, 1961, 28 U.S.C.App. (Supp. III, p. 855, and explanatory notes thereunder).[1]

■ Similarly, there seems to be no disagreement that under 28 U.S.C. §

---

1. *"Form 2.—Allegation of Jurisdiction.*

"(a) Jurisdiction founded on diversity of citizenship and amount.

"Plaintiff is a [citizen of the State of Connecticut (form for natural person)] [corporation incorporated under the laws of the State of Connecticut having its principal place of business in the State of Connecticut] and defendant is a corporation incorporated under the laws of the State of New York—having its principal place of business in a State other than the State of Connecticut. The matter in controversy exceeds, exclusive of interest and costs, the sum of ten thousand dollars.

 * * * * *

*Explanatory Notes*

"1. *Diversity of citizenship.* U.S.C., Title 28, § 1332 (Diversity of citizenship;

amount in controversy; costs), as amended by PL 85–554, 72 Stat. 415, July 25, 1958, states in subsection (c) that 'For the purposes of this section and section 1441 of this title [removable actions], a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.' Thus if the defendant corporation in Form 2(a) had its principal place of business in Connecticut, diversity of citizenship would not exist. An allegation regarding the principal place of business of each corporate party must be made in addition to an allegation regarding its place of incorporation. * * * "

1653,[2] and Rule 15(a), Federal Rules of Civil Procedure,[3] complaints in cases of original jurisdiction may be amended freely to perfect defective jurisdictional allegations where facts supporting jurisdiction do exist. Even in such cases, however, it is the duty of any federal court, trial or appellate, not to proceed with a case after defects in jurisdictional allegations come to its attention, by motion of the parties or otherwise, until the defects have been cured, Emmons v. Smitt, 149 F.2d 869 (6th Cir. 1945), cert. den. 326 U.S. 746, 66 S.Ct. 59, 90 L.Ed. 446; Miller v. Weller, 286 F.2d 172 (3rd Cir. 1961); and the presumption is always against jurisdiction, Bell v. Gray, 191 F.Supp. 328 (D.E.D. Ky.1960), affirmed 287 F.2d 410 (6th Cir. 1960).

But the problem is more difficult where the defective allegations are in a removal petition, where considerations of state sovereignty, comity, and traditional judicial respect for the jurisdiction of other courts invoke the rule of caution on questions of conflicting jurisdiction, Metcalf Bros. & Co. v. Barker, 187 U.S. 165, 176, 23 S.Ct. 67, 47 L.Ed. 122 (1902). Added to this is the fact that a remand of such a case does not deprive either party of his day in court on the merits, whereas a dismissal in a case of original jurisdiction, if not reversed, could foreclose substantive rights.

These considerations have led to the development of a judicial rule that removal statutes are to be strictly construed against removal. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108, 61 S.Ct. 868, 85 L.Ed. 1214 (1941), and of a statutory rule that an order of remand may not be appealed, 28 U.S.C. § 1447(d).

Even prior to the statutes now under consideration, the resulting difficulties had inevitably brought the development of a body of technical law as the courts tried to explain why one petition was sufficient to divest state court jurisdiction and another insufficient. See the summary in 76 C.J.S. Removal of Causes §§ 214 et seq. The technicalities, in turn, have produced reaction from those adversely affected, but against the solid considerations of policy and justice involved, the cry of "technicality" from a removing defendant in a diversity case has a hollow ring. He, himself, has invoked the technicality of diverse citizenship to remove a plaintiff from the forum of his choice into a forum where the risks of jurisdictional defects continue to rest on the plaintiff, see American Fire & Cas. Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951).

This court has had only eight cases called to its attention involving the precise question of the effect of 28 U.S.C. § 1332(c) upon removal petitions. All eight involved missing or defective allegations of the principal place of business of a corporate party. Of these, two held that the petition could not be amended after the twenty-day period, with the implication that this would apply whether the allegation should be deemed absent or merely defective. Gobet v. Ponce Intercontinental Hotels Corp., 184 F.Supp. 171 (D.P.R.1960); Washington-East Washington Joint Authority v. Roberts & Schaefer Co., 180 F.Supp. 15 (D.W.D. Pa.1960). Four held the particular allegations considered could not be amended. F. & L. Drug Corp. v. American Central Ins. Co., 200 F.Supp. 718 (D.Conn.1961); Adams v. Ralph L. Smith Lumber Co., 181 F.Supp. 729 (D.N.D.Calif.1960); Roseberry v. Fredell, 174 F.Supp. 937 (D.E.D.Ky.1959); Browne v. Hartford Fire Ins. Co., 168 F.Supp. 796 (D.N.D. Ill.1959); Two of the cases allowed

---

2. "§ 1653. *Amendment of pleadings to show jurisdiction*
"Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."

3. "a. *Amendments.* A party may amend his pleadings once as a matter of course at any time before a responsive pleading is served * * *. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

amendments. Firemen's Ins. Co. of Newark, N. J. v. Robbins Coal Co., 288 F.2d 349 (5th Cir. 1961) cert. den. 368 U.S. 875, 82 S.Ct. 122, 7 L.Ed.2d 77 (1961); Park v. Hopkins, 179 F.Supp. 671 (D.S.D. Ind.1960).

The apparent rule of the Gobet and Washington-East Washington cases, supra, that amendments could not in any case be allowed after the twenty-day period might commend itself to this court if it were an open one in this circuit. However, the interpretation placed upon Kinney v. Columbia Savings & Loan Association, 191 U.S. 78, 24 S.Ct. 30, 48 L.Ed. 103 (1903), by the Court of Appeals for the Sixth Circuit in La Belle Box Co. v. Stricklin, 218 F. 529 (1914), forecloses that question here. Therefore, the inquiry is not whether a petition may be amended to perfect jurisdictional allegations but what circumstances will justify an amendment.

If La Belle Box were taken as establishing the limits of amendment, its rule still could not reach any of the cases now before the court and all would have to be remanded. In that case, the technicality was that the individual plaintiff's citizenship was alleged only as of the time of the petition and not as of the time the suit was filed, whereas both were required to be covered. In spite of the highly technical nature of the defect in the La Belle Box case, and even with the support of the Kinney decision, the court thought it necessary to point out in detail the many considerations supporting its ruling allowing an amendment in the particular case before it. Among these were other allegations in the pleadings tending to negate the likelihood that the plaintiff's citizenship had changed between the two pertinent dates and also the extreme hardship a remand would have imposed on the plaintiff after years of litigation had yielded recovery of an otherwise valid judgment in the federal courts, 218 F. at 532–534.

Most of the eight cases in direct point cited above, the La Belle Box case, and a good many of the other cases called to the court's attention indicate that the Kinney case is the starting point of any inquiry about the extent to which a removal petition may be amended.

In Kinney, the original petition alleged, insofar as pertinent here, only that the suit was "between citizens of different states" and that the defendant was a "resident and citizen" of Colorado. The court looked to the state court record and found the plaintiff had alleged that "the defendant was and now is a corporation organized and existing under the laws of the state of Colorado," and that the notarized trust deed in controversy identified the plaintiffs as being "of the county of Salt Lake and the territory of Utah." All this, the court held, was enough to provide a predicate for amending the petition to show the state of defendant's incorporation and the state of the plaintiff's citizenship. The amendment offered by the defendant, allowed by the circuit court, and affirmed by the Supreme Court in Kinney supplied all the allegations that were generally required before 1958.

The Kinney case was decided under the provisions of Chapter 866 of the Acts of the Fiftieth Congress, First Session, approved August 13, 1888, 25 Stat. 433–37. This statute gave the then circuit courts jurisdiction of a "controversy between citizens of different States," § 1, and provided for removal of such suits from state courts by defendants "being non-residents of that [the forum] State," § 2. The definitions of citizenship and residence seem to have been left to judicial determination, and the rules applied were derived from the body of case law—an individual was a citizen of the state of his domicile, Robertson v. Cease, 97 U.S. 646, 24 L.Ed. 1057 (1878), and a corporation a citizen of the state by which it was created, Chicago & N. W. R. Co. v. Whitton, 13 Wall. (80 U.S.) 270, 20 L.Ed. 571 (1872). A corporation might have citizenship in more than one state if it were incorporated in more than one, but if it were incorporated in the state of the forum it was conclusively deemed a citizen of that state for purposes of diversity and re-

moval jurisdiction, Memphis & C. R. Co. v. Alabama, 107 U.S. 581, 2 S.Ct. 432, 27 L.Ed. 518 (1883). Removal petitions in civil cases ordinarily were not required to be verified although verification was considered the better practice, 54 C.J., Removal of Causes, § 237, p. 319, n. 36[a]. Any petition considered by a federal court would, except in special cases not pertinent here, have been previously submitted to the state court in which the case was pending.

In Kinney, therefore, the allegations of the petition before the court very nearly met the requirements of the statute then in effect, in that it alleged that the individual party plaintiff and the corporate party defendant in a Utah court were "citizens of different states" and the defendant was a "resident and citizen" of Colorado. The failure to allege directly the citizenship of the plaintiff or the state of incorporation of the defendant made the allegations defective under judicial rules rather than under any specific statutory provision. Diversity was alleged in the words of the statute and the citizenship of the defendant was alleged in conclusionary form. Furthermore, the facts tending to establish the plaintiff's domicile in the state of the forum appeared in the record in verified form, and the record also showed in precise and direct language the facts supporting the petition's conclusion as to the defendant's citizenship. Assuming, as the court apparently did, that an allegation of the state of incorporation was sufficient at that time to establish the citizenship of the defendant for removal purposes, the petition and accompanying papers clearly provided an adequate basis for application of the rule deduced in Kinney from prior cases in this language, 191 U.S. at 83, 24 S.Ct. at 32:

> "These cases recognize the power of the Circuit Court to permit amendment of pleadings to show diverse citizenship, and of removal proceedings where there is a technical defect and there are averments sufficient to show jurisdiction."

This rule recognizes the essential difference between complaints and removal petitions already mentioned herein. The case leaves open to speculation what the court might have decided if its attention had been called to the absence of any averment, even in the amendment offered by the defendant, negating the possibility that the corporation had been incorporated in more than one state. Memphis & C. R. Co. v. Alabama, supra.

Since the Kinney opinion was handed down, many changes have been made in applicable statutes. Verification of the petition became a statutory requirement in the Judicial Code of 1911, 28 U.S.C. former § 72. In 1915, Congress specifically provided for amendment of defective jurisdictional allegations both in original pleadings and in removal petitions, 28 U.S.C. former § 399. This provision was contracted in 1948 to its present brief form as 28 U.S.C. § 1653, supra, n. 2, as part of the general revision of the Judicial Code in which drastic changes in removal procedures were enacted, 28 U.S.C. § 1446. Under the new procedure the state court is given no opportunity to judge the sufficiency of the petition to oust it of jurisdiction. A mere notice to the state court clerk of the filing of the petition and bond in the federal court removes the case until remanded by the federal court, § 1446(e). The new law abolished time limits based upon state court procedure, and substituted brief, uniform periods, § 1446(b). The required content of the petition was specified by the statute—"a short and plain statement of the facts which entitle him or them to removal," § 1446(a). And, substantively, the right of removal was restricted to defendants who were not citizens of the forum state, § 1441(b), instead of non-resident defendants as in former § 71.

From all this it is clear that the petition under the 1948 Judicial Code has become a more vital factor in the process of divesting state court jurisdiction and

invoking that of the federal court than it was at the time of Kinney. The federal court, in exercising its initial duty to determine whether it has jurisdiction, usually has only the petition as a source for verified facts. Allegations in a state court record usually have neither direct verification nor any implication of acceptance by the state court. The record cannot, then, serve as well for a source of facts as it did in the Kinney case, when verification was not required.

It was against this background that Congress, after considerable study by its own committees and other agencies, adopted 28 U.S.C. § 1332(c). The language was adopted after consideration of a wide variety of proposals ranging from one that would have barred corporations entirely from invoking diversity jurisdiction, see Senate Report No. 1830, House Report No. 1706, 86th Cong., 2nd Sess., as reported in 1958 U.S.Code Cong. & Adm.News, Vol. 2, p. 3099, at pp. 3108–3111, to one that would merely have prevented a corporation from invoking diversity jurisdiction in a state from which it received more than fifty percent of its gross income during the twelve months preceding filing of the suit, id. at p. 3124. One 1951 proposal of the Committee on Jurisdiction and Venue of the Judicial Conference of the United States would have provided that a corporation, for diversity and removal purposes would be deemed "a citizen of the State of its *original* creation" and of "a state where it has its principal place of business" [Emphasis supplied]. Id. at p. 3133. The Judicial Conference's proposal of September, 1951, would have made these definitions read "a citizen both of *the States* of its creation and the State in which it has its principal place of business" [Emphasis supplied]. Id. at p. 3107. The wording as enacted into law is *"any* State by which it has been incorporated and of the State where it has its principal place of business" [Emphasis supplied]. The provision must be interpreted in the light of the "whole history of both growth and limitation of federal-court jurisdiction," Carroll v.

United States, 354 U.S. 394, 399, 77 S.Ct. 1332, 1335, 1 L.Ed.2d 1442 (1957).

It appears, then, that the 1958 amendment did more than merely add the "principal place of business" definition to the prior law as to the citizenship of corporations. It could with some reason be construed to have reopened questions about the incorporation of one of the removing defendants now before this court, once settled under the old law in Goodlett v. Louisville & N. R. Co., 122 U.S. 391, 7 S.Ct. 1254, 30 L.Ed. 1230 (1887), particularly if that citizenship has been affected by subsequent mergers or consolidations having effects similar to those considered in Patch v. Wabash R. Co., 207 U.S. 277, 28 S.Ct. 80, 52 L.Ed. 204 (1907). The legislative selection of the particular language, *"any* State by which it has been incorporated," taken in conjunction with the general legislative purpose to restrict removal and diversity jurisdiction and to simplify the applicable rules, could result in elimination of the basic source of confusions in this area discussed in Seavey v. Boston & M. R. Co., 197 F.2d 485 (1st Cir. 1952).

■ In determining what allegations this new body of law requires a petition to contain to give this court jurisdiction to allow an amendment after the twenty-day filing period, it will not be helpful to try to distinguish allegations of "facts" from allegations of "conclusions." The difference is merely one of degree like the difference between "fact" and "opinion" testimony. See Morgan, 2 Basic Problems of Evidence 216 et seq. (A.L.I. 1961 ed.). The test should be whether the verified jurisdictional allegations of the petition are sufficiently specific and detailed to disclose to the court without material ambiguity that the case falls within the limitations set by each of the pertinent statutory provisions.

■ The court should be able to determine from the face of the petition the state of each individual party's citizenship, any state by which each corporate party has been incorporated, and the

state in which each corporate party has its principal place of business. This should be in sufficient detail to allow the court to determine that no defendant by any of the applicable definitions is a citizen of either the forum state or of any state in which any plaintiff is a citizen by any of the definitions. This, of course, requires careful draftsmanship if the petition is to rise to the dignity of its high function—*ex parte* divestiture of the jurisdiction of a court of general jurisdiction.

None of the petitions now before the court meets the requirements. All of them fall short of showing that some corporate party's principal place of business is not such as to defeat jurisdiction. Some also fail to dispose of the possibilities arising under the definition based on "any State" of incorporation. The question in each case is whether the allegations as to each definition are missing or merely defective. Missing allegations may not be supplied, but defective allegations may be amended.

Some of the defendants have relied upon their use of such phrases as "foreign corporation," "entirely between citizens of different states," and "diversity of citizenship" as predicates for amendments, citing Firemen's Ins. Co. of Newark, N. J. v. Robbins Coal Co., supra, 288 F.2d 349, as authority. That case will not stretch to cover "foreign corporation," because the phrase has a distinctive meaning as the opposite of "domestic corporation." One purpose of 28 U.S.C. § 1332 was to eliminate the cases formerly brought into this court under allegations based on this concept.

The Firemen's case is authority for the defendants' contentions as to the other two phrases, however. The case may be distinguished from many of the present cases in only one material respect: that the question was first raised on appeal. Some defendants in their briefs here seem to contend that this is a factor increasing the authority of that case, but as long as La Belle Box Co. v. Stricklin, supra, 6 Cir., 218 F. 529, remains good law in this circuit the opposite conclusion is required. It is a factor of no mean importance that a cause has already been litigated fully in a trial court before the question of remand to a state court is raised, because a remand would wipe all that has been done from the record and the parties must start anew. Some counsel have also urged that it is important to note that the Supreme Court of the United States denied certiorari in the Firemen's case, 368 U.S. 875, 82 S.Ct. 122, 7 L.Ed.2d 77, but the only question presented to the Supreme Court by the petition for writ of certiorari went to the merits of the case, see 30 Law Week 3082. In the absence of any indication in the reported opinion that the Court of Appeals for the Fifth Circuit took into consideration all the authorities considered herein, or the different considerations involved before trial, this court must regretfully decline to follow its holding here.

The allegation that the parties are "citizens of different states" may be entirely true without negating the possibility that they are also citizens of the same state whenever one of the parties is a corporation.

The allegation that there is "diversity of citizenship" goes little further toward meeting the requirements of the statute than a mere citation of the number of the code section. The same sort of inferences would have to be indulged.

An even less satisfactory basis for amendment may be found in an allegation that a corporate defendant is a "nonresident" of the forum state, although it usually is also the state of the plaintiff's citizenship. Allegations of residence are insufficient even as to individual parties, although amendable. The allegation was obviously designed to meet the non-resident defendant requirement of the old statute, 28 U.S.C. former § 71, and in these cases it usually appears along with other allegations likewise obviously designed only to meet the requirements of the outdated statute.

An allegation that a corporation was "not incorporated under the laws of the State of Tennessee wherein this action

was brought" is addressed specifically to the definition based on incorporation and gives no hint of any consideration of the definition based on the principal place of business.

In oral argument in one case, counsel urged that the appearance of process papers in the record showing that service was had on the defendant through state officials or through a statutory agent for service of process provides a basis for inferring that the corporation was neither incorporated in nor maintaining its principal place of business in Tennessee. But the inference is not compelled in the absence of some affirmative indication that this procedure was the only one available to the plaintiff. The inference may be helpful, however, in bolstering some allegations, as will appear hereafter.

 Counsel's brief in one case urges that a petition drawn before the date the Supreme Court amended Form 2(a), supra, should be read liberally to permit an amendment. But this argument implies that the statute was ineffective until the Supreme Court adopted a suggested form to implement it. Actually, of course, the approved form applies directly only to complaints and does not fully comply with the requirements for petitions for removal, e. g., it contains no reference to citizenship at both the time of filing of the original suit and the time of filing the petition. The Federal Rules

of Civil Procedure, in which the form appears as an appendix referable to Rule 84, govern procedure in removed cases only after removal, Rule 81(c).

 The discussion thus far disposes of the cases numbered 2730 (Evans-Hailey v. Crane Co.); 2781 and 2782 (Manning v. Lion Oil); 2828 (Sullivan v. L. & N.); 2835, 2836 and 2837 (Rehorn v. Terminal Transport); 2847 (Falster v. Travelers); 2909 (Rowlett v. Kilburn); 3032 (Seyfert v. Newark Insurance); 3050 and 3052 (Taylor v. Insurance Companies); and 3156 (Buchanan v. Continental Southern). In each at least one allegation is entirely missing. These cases will, therefore, be remanded.

 In. eight cases the question is whether an allegation that a defendant corporation is "not a citizen of the State of Tennessee, in which the action was brought" provides a basis for amendment where the citizenship of the plaintiffs is adequately limited to Tennessee by other allegations.[4] The negative nature of the allegation tends to exclude all possibilities not previously negated. In seven of the cases, all filed by the Louisville & Nashville Railroad, the only point not already fully and completely covered positively and negatively at least once in the previous allegations was the principal place of business of the defendant corporation. This final allegation in those cases may be taken as a defective attempt to cover the remaining point, and there-

4. The allegations from No. 2906 will illustrate:

"1. That your petitioner, Louisville and Nashville Railroad Company, the defendant in the above cause of action, at the time this action was commenced was, and still is, a corporation incorporated under and existing by virtue of the laws of the State of Kentucky, and was not, and is not, incorporated under the laws of the State of Tennessee, wherein this action was brought. That your petitioner, Jesse Lee Routt, is a nonresident of the State of Tennessee, and a citizen and resident of the State of Kentucky.

"That the plaintiff in the above cause of action is a citizen and resident of the State of Tennessee.

\* \* \* \* \*

"4. That the controversy herein between the plaintiff and your petitioners is a controversy between a citizen of the State of Tennessee, on the one hand, and citizens of the State of Kentucky, on the other hand. At the time of the service of said summons the petitioner, Louisville and Nashville Railroad Company, was and now is, a corporation duly organized and existing under and by virtue of the laws of the State of Kentucky.

\* \* \* \* \*

"6. That this is a civil action brought in a State Court of which the United States District Courts have original jurisdiction because of diversity of citizenship, and the defendants are not citizens of the State of Tennessee, in which the action was brought \* \* \*."

fore it provides a basis for amendment. In the eighth of these cases, which was removed by the United States Fidelity & Guaranty Co., No. 2985, the question is closer.[5] In that petition the allegations prior to the phrase under consideration established only the individual plaintiffs' citizenship and one state in which the defendant was incorporated, but did not negate the possibility that the defendant was also incorporated by the State of Tennessee. The negative allegation must therefore serve as a base for a dual amendment to perfect allegations under both statutory definitions of corporate citizenship. The base might not be broad enough for the purpose except that the record discloses that service of process was had through the Commissioner of Insurance and Banking of the State of Tennessee and that the plaintiffs alleged that the defendant's "principal office" was in Maryland. With this assistance from the record, the negative allegation will be deemed sufficient basis for amendment.

Defendants will therefore be allowed time in which to file verified amendments to perfect the defective allegations in cases numbered 2886 (Murdic v. L. & N.); 2906 (Strube v. L. & N.); 2978 (Burgess v. L. & N.); 2985 (Warren v. U. S. F. & G.); 3058, 3059 and 3060 (Jennings v. L. & N.); and 3167 (Mundy v. L. & N.).

It remains to consider the peculiar problem in No. 2901 (Flippen v. Texas Eastern). In that case the citizenship of the plaintiffs was properly alleged. As to one defendant, the petition alleged the state of incorporation, the location of its principal office and the location of its principal place of business. As to the second defendant, it alleged only the state of incorporation and the location of the principal office. The location of a corporation's "principal office" is only one of many factors the courts consider in determining its principal place of business, Washington-East Washington Joint Authority v. Roberts & Schaefer Co., supra, 180 F.Supp. 15; Continental Coal Corp. v. Roszelle Bros., 242 F. 243 (6th Cir., 1917), but it may fairly be interpreted as a defective allegation intended to disclose the principal place of business. The court would have had no difficulty in allowing an amendment if it weren't for the separate allegation of "principal office" and "principal place of business" as to the first defendant. This discrepancy could be interpreted with some logic as indicating that the petitioner was aware of the distinction and therefore meant something else by the allegation of principal office. Here, however, no independent purpose would be served and it must be deemed to have been intended as a part of the allegation of principal place of business. The positive allegation of the states of incorporation of both defendants will provide sufficient basis for an amendment negating incorporation elsewhere, and the allegation of the principal office will provide a basis for alleging the principal place of business of the defendant H. C. Price Co. The defendants in this case, therefore, will also be allowed time in which to file a verified amendment to perfect the defective allegations.

Orders will be entered in all of the cases in accordance with this opinion.

5. The pertinent allegations are: " * * * The complainants, Mrs. D. L. Warren, Sr. and D. L. Warren, Jr. at the time this action was commenced were and still are citizens of the State of Tennessee; and the defendant United States Fidelity and Guaranty Company at the time this action was commenced was and still is a corporation incorporated under the laws of the State of Maryland, and was not and is not a citizen of the State of Tennessee wherein this action was brought."